**Vicki A. Depew GEARHEART, Plaintiff,**

v.

**Matthew L. WALLACE, Esquire State of S.C. Solicitor, Greensville S.C., V.C.C.W., Warden Wendy Hobbs, Virginia Department of Corrections, Ron Angelone, Governor George Allen, and Caroline Mattos, Defendants.**

**Action No. 2:95cv637.**

United States District Court,
E.D. Virginia,
Norfolk Division.

April 24, 1997.

Vicki A. Depew Gearheart, pro se.

## OPINION AND FINAL ORDER

JACKSON, District Judge.

Plaintiff, a Virginia inmate, brings this action pursuant to 42 U.S.C. § 1983, to redress alleged violations of her constitutional rights. Specifically, plaintiff claims that the defendants have allowed an invalid detainer to remain pending against her and that detainer has prejudiced her present incarceration. Plaintiff alleges that the detainer is invalid because defendant Wallace failed to comply with the Interstate Agreement on Detainers (IAD). Plaintiff seeks declaratory and injunctive relief.

Plaintiff requests that the detainer against her be dismissed. It is clear that this may only be done through a writ of habeas corpus. *Heck v. Humphrey,* 512 U.S. 477, 485–86, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994). However, plaintiff may seek other relief under 42 U.S.C. § 1983. *Bush v. Muncy,* 659 F.2d 402 (4th Cir.1981). Plaintiff claims that Virginia Department of Corrections (VDOC) is using the detainer to override her custody classification resulting in increased security status, decreased eligibility for programs, and denial of parole. In addition, she claims that she is being retaliated against for this law suit by being denied dental care. She also claims she has suffered great stress, hair loss, insomnia and depression.

### I.  Procedural History

On June 19, 1995, plaintiff, Vicki A. Depew Gearheart (Gearheart), submitted her *pro se* complaint. Plaintiff's complaint was conditionally filed. By order filed July 11, 1 995, plaintiff was directed to complete a questionnaire designed to assist the court in evaluating her claims. Although plaintiff returned a questionnaire on August 3, 1995, she expressed her desire to rely on the original complaint. Accordingly, the questionnaire will not be considered by the court. On October 19, 1995, plaintiff paid the partial filing fee assessed by the court. By order filed November 8, 1995, plaintiff was deemed to be proceeding *in forma pauperis* and the complaint was ordered filed. By order filed January 25, 1996, defendants were directed to file responsive pleadings. On March 25, 1996, defendants Hobbs, Angelone, and Allen filed an answer and a motion to dismiss. Due to an administrative error, no response was filed on behalf of defendant Wallace. On August 14, 1996, defendant Wallace filed a motion for an extension of time in which to respond and an answer. By order filed September 9, 1996, the court granted defendant Wallace's motion for an extension of time and accepted his answer as timely filed. The court converted the motion to dismiss, filed by defendants Hobbs, Angelone and Allen, into a motion for summary judgment. In that same order, the court denied motions by plaintiff for a default judgment and for appointment of a guardian ad litem. In addition, the court dismissed the Virginia Department of Corrections, the Virginia Correctional Center for Women, Solicitor of South Carolina and Caroline Mattos as defendants in this action. The court took plaintiff's motion for appointment of counsel under advisement.

In accordance with *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), plaintiff was given an opportunity to respond to defendants' motion for summary judgment with any material that she wished to offer in rebuttal. The court also instructed plaintiff that failure to submit any materials could result in an adverse judgment based on defendants' motion and accompanying affidavits. Plaintiff submitted an affidavit and a motion for summary judgment.

By order filed October 2, 1996, the court appointed counsel to represent plaintiff. Plaintiff was given an additional forty-five days in which to file any additional material in response to the pending motion for summary judgment.

On October 15, 1996, defendant Wallace filed his motion for summary judgment. Plaintiff filed a motion to amend her complaint and to permit filing of a brief in excess of thirty pages. Defendants did not object. By order filed December 13, 1996, plaintiff's motion to amend was granted and defendants were given an opportunity to respond. By order filed January 8, 1997, the court granted a request by counsel that defendants not be required to answer the amended complaint. Counsel requested ora; argument on the motions for summary judgment. On February 21, 1997, the court heard oral argument on the motions for summary judgment.

## II. Facts

There is no dispute as to the material facts of this case. Plaintiff is a Virginia inmate, currently incarcerated at Pocahontas Correctional Unit # 13. Plaintiff claims that South Carolina placed a detainer on her, she moved for a speedy trial, and South Carolina did not respond. Accordingly, she asserts that the detainer, which remains pending against her, is illegal. Plaintiff alleges that this has prejudiced her current incarceration by increasing her custody classification and resulting in less good-time credits and ineligibility for various rehabilitative programs.

On July 10, 1991, Gearheart was sentenced to twelve (12) month in jail and $1,000.00 for contempt of court, based on her refusal to submit a handwriting sample as ordered by the general district court. Gearheart appeal-

ed and the circuit court sentenced her to an indefinite term until she had complied with the general district court's order. Gearheart was housed in the Roanoke City Jail for this sentence in January, 1992. The jail received a letter dated January 10, 1992, from the Greenville County, South Carolina Sheriff's Office. The letter was from the extradition officer, Wayne Townsend, asking the jail to put a hold on Gearheart for extradition to South Carolina once the local charges had been disposed. Deputies at the jail informed Gearheart that a detainer had been placed against her and that it had been filed September 16, 1991.

Gearheart requested forms to file for a speedy trial. However, she was told these forms were not available at the jail. On January 23, 1992, Gearheart sent a one-page letter entitled "Motion for a Quick and Speedy Trial" to the Greenville Circuit Court and to the Greenville County Solicitor. She requested acknowledgment of the motion. On the same day Gearheart advised Sheriff Hudson by letter that she had filed a motion for a speedy trial in reference to the detainer placed on her by South Carolina. She did not specifically request that a certificate of incarceration be sent to South Carolina. Gearheart claims that she thought this would be done based on her notice.

Gearheart never received any reply from South Carolina, and assumed the charges against her were not being pursued. On June 28, 1 992, she sent a letter to the Circuit Court asking that the charges be dismissed. Gearheart heard nothing from South Carolina. On November 11, 1992, Gearheart asked official at the Pulaski County Jail, the jail at which she was then housed, whether the detainer had been lifted. The jail officials replied that Greensville, South Carolina had a detainer on her. On that same day, she wrote to the Greensville Circuit Court and the South Carolina Solicitor to inquire why the detainer had not been lifted. She received no response.

Gearheart arrived at the Virginia Correctional Center for Women on February 12, 1993, to begin her sentence for passing forged checks. On March 12, 1993, she was

informed that South Carolina had just filed a detainer against her. The detainer was dated March 8, 1993, and showed the initial date of September 16, 1991. VCCW official gave IAD forms to Gearheart and asked if she wished to file for a speedy trial. Gearheart refused based on her belief that she had already done so and concern that refiling would waive her right to protest the non-dismissal of the charges in 1992.

### III. Standard

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See. e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions v. Burlington Indus.,* 763 F.2d 604, 610 (4th Cir.1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex Corp,,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. Such facts must be presented in the form of exhibits and sworn affidavits. Failure by plaintiff to rebut defendants' motion with such evidence on his behalf will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

Because plaintiff has failed to meet this burden, the court **GRANTS** defendants' motions for summary judgment.

### IV. Analysis

This case presents a number of issues of first impression for this court. Virginia's version of the IAD, Virginia Code § 53.1–210, Article III, (a) provides in relevant part:

[w]henever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

The issues arising in this case include: 1) did the Townsend letter constitute a detainer; 2) was Gearheart's letter sufficient to trigger the IAD; 3) is a local jail a penal or correctional institution of Virginia within the meaning of the IAD; and 4) had Gearheart entered a period of confinement for purposes of the IAD. However, the court need not address all these issues. The failure to submit a certificate of incarceration is fatal to plaintiff's claim irregardless of whether she had entered a term of imprisonment in a state facility or not.

#### A. The Townsend Letter

■ The first issue is whether the Townsend letter dated January 17, 1992 was a detainer. Defendants claim that the detainer was not filed with the Virginia Department of

Corrections Until March 8, 1993. Plaintiff claims that the Townsend letter satisfies the definition of a detainer.

The 4th Circuit in *Stewart v. Bailey,* 7 F.3d 384 (4th Cir.1993) defined a detainer as a:

> [r]equest filed by a criminal justice agency with [the] institution in which [a] prisoner is incarcerated, asking [the] institution either to hold [the] prisoner for [the] agency or to notify [the] agency when release of [the] prisoner is imminent. (quoting *Black's Law Dictionary* 449 (6th ed.1990) which quotes *Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985)).

This definition is applicable to federal interpretations of the IAD. However, the Fourth Circuit noted that the fundamental concept underlying the various definitions of detainer was notice.

If the Townsend letter is not a detainer, then the IAD was not triggered. *See United States v. Mauro,* 436 U.S. 340, 343, 98 S.Ct. 1834, 1838–39, 56 L.Ed.2d 329 (1978). If the IAD was not triggered, Gearheart's motion for a quick and speedy trial would have been premature. It appears to this court that the Townsend letter is sufficient to meet the general definition of a detainer. Accordingly, the court **FINDS** that the Townsend letter was a detainer. However, this court will not decide whether a detainer received while a prisoner is in a local facility is sufficient to trigger the IAD.

*B. The Gearheart's Letter*

■ Gearheart contends that she attempted to comply with the IAD. Once she was informed of the detainer, she sent a one-page letter entitled "Motion for a Quick and Speedy Trial" to the Greenville Circuit Court and to the Greenville County Solicitor. She requested acknowledgment of the motion. On the same day Gearheart advised Sheriff Hudson by letter that she was filing a motion for a speedy trial in reference to the detainer placed on her by South Carolina. She did not specifically request that a certificate of incarceration be sent to South Carolina. Gearheart claims that she thought this would be done based on her notice.

The Fourth Circuit has not addressed the issue of whether a certificate of incarceration is necessary to trigger the IAD. However, other circuits have held that the certificate is necessary and that a motion not accompanied by this certificate is insufficient to start the clock on the right to a speedy trial. *United States v. Henson,* 945 F.2d 430, 435 (1st Cir.1991); *United States v. Reed,* 910 F.2d 621, 624 (9th Cir.1990); *Norton v. Parke* 892 F.2d 476, 480–81 (6th Cir.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1533, 108 L.Ed.2d 772; *Casper v. Ryan,* 822 F.2d 1283,1292 (3rd Cir.1987), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988). In addition, Virginia state courts have also held that the lack of a certificate of incarceration is fatal to the claim. *Eckard v. Commonwealth* 20 Va.App. 619, 460 S.E.2d 242.

This court agrees that the plain language of the statute requires that a certificate of incarceration accompany a motion for a speedy trial. Under Virginia law and South Carolina law, a certificate of incarceration accompanying the motion for a speedy trial is required to trigger the IAD. *Id.; State v. Johnson,* 278 S.C. 668, 301 S.E.2d 138 (1983). Accordingly, a motion for speedy trial that is not accompanied by a certificate of incarceration will not trigger the IAD.

It is undisputed that a certificate of incarceration did not accompany Gearheart's letter asking for a speed trial. Gearheart admits that she did not ask the sheriff to prepare a certificate of incarceration. She merely assumed that he would do so based on her letter advising the sheriff that she was filing a motion for speedy trial. The content of that letter is as follows:

> Please be advised that I Vicki A. Todd, Henson, Depew, Gearheart, has filed for a quick and speedy trial, to the State of South Carolina on the above date. This letter is to notify you of my intents. This is in Reference to detainers S.C. has on me.

This letter clearly states that she filed the motion. She did not send the motion to the sheriff and request that he attach a certificate of incarceration. Based on this letter, plaintiff cannot claim that the sheriff should

have sent a certificate of incarceration. Plaintiff's motion for a speedy trial, without an accompanying certificate of incarceration was not sufficient to trigger her right to a speedy trial under the IAD. Accordingly, plaintiff has failed to establish that the detainer currently lodged against her is invalid.

It is unfortunate that Gearheart was not informed that her attempt to file for a speedy trial was inadequate. Apparently, the Solicitor never acknowledged Gearheart's attempts to secure a speedy trial or responded to her inquiries as to why the detainer had not been lifted. After Gearheart learned of the detainer filed against her dated March 8, 1993, she again inquired as to why the detainer had not been lifted. Again, she received no response. Indeed, it took a letter from the institutional attorney at the Virginia Correctional Center for Women to receive a response. Defendant Wallace's response, dated May 10, 1 994, stated, "[t]he handwritten letters of Ms. Gearheart submitted to various agencies in our State, simply do not conform to the provisions of Article Ill." The institutional attorney then requested that defendant Wallace explain why Gearheart's letters were inadequate. It was not until August 3, 1 994, that defendant Wallace explained his reasoning for finding that the letters did not conform to the IAD. Clearly, had Gearheart been informed two years earlier, that her letters were not sufficient to trigger the IAD, she could have cured any defects at a much earlier time. Virginia officials appear to have been equally unhelpful. Although it is clear that Gearheart's attempts to invoke the IAD were poorly handled, there was no violation of any constitutional right. The key to resolving this situation now rests with Gearheart. She may file her motion for a speedy trial and hope that South Carolina ignores this motion as well.

## V. Conclusion

For the aforementioned reasons, the court **GRANTS** defendants' motions for summary judgment. This action is **ORDERED DISMISSED.**

Plaintiff is advised that she may appeal from this final order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this order.

The Clerk is **DIRECTED** to send a copy of this order to counsel for plaintiff and counsel for defendants.

IT IS SO **ORDERED.**