**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**August 22, 2012**

# In the Court of Appeals of Georgia

A12A1112. DENSON v. THE STATE.

McFADDEN, Judge.

This is an interlocutory appeal from the trial court's denial of Billy Denson's motion for bond. While Denson was serving a prison sentence for a different offense, the District Attorney for Houston County filed a purported detainer on him with the Georgia Department of Corrections. The filing of that purported detainer, Denson argues, constituted his arrest and confinement on the charges at issue in this case and therefore triggered his rights under OCGA § 17-7-50. That statute requires charges to be brought before a grand jury within 90 days of arrest and confinement; and it provides, if that deadline is not met, that "the accused shall have bail set upon application to the court." That deadline, Denson argues, was missed in this case and the trial court was therefore required to grant his motion for bond. We disagree. As

detailed below, the Department of Corrections was not authorized to accept and file the purported detainer, because it did not meet the statutory requirements for a detainer. See OCGA §§ 42-6-1, 42-6-2. Its unauthorized filing did not trigger the requirements of OCGA § 17-7-50 or entitle Denson to bail under that Code section. Accordingly, we affirm.

As an initial matter, we note that the appellate record does not contain either the detainer or any specific information about the sentence Denson was serving when the detainer was filed. It is Denson's burden, as the appellant, to show error affirmatively by the appellate record. See *Westmoreland v. State*, 287 Ga. 688, 696 (10) (699 SE2d 13) (2010). Nevertheless, the Appellate Practice Act requires that we bring about a decision on the merits, if possible. See OCGA § 5-6-30. In the ruling before us, the trial court set forth certain facts that comported with representations made by both the prosecutor and defense counsel during the motion hearing. To the extent that those facts appear from the record and briefs to be undisputed, we will consider them in reviewing the trial court's ruling. See generally *Rank v. Rank*, 287 Ga. 147, 149 (2) (695 SE2d 13) (2010) (absent objection, counsel's evidentiary proffers to trial court during hearing will be treated as evidence on appeal).

Those facts are as follows. On February 5, 2010, the Houston County Magistrate Court issued warrants for Denson's arrest on the charges at issue in this case. At that time, Denson was serving a sentence of confinement in state prison for his conviction for a different offense. The purported detainer was filed on February 9, 2010. At some point not specified in the record, Denson finished serving his sentence on the prior offense. On November 7, 2011, Denson was released from state prison and transferred to the Houston County jail, and on November 15, 2011, the charges at issue in this case were brought before a grand jury, resulting in Denson's indictment that same day.

Denson contends that the grant of his motion for bond was mandated by OCGA § 17-7-50, which provides, in part,

> [a]ny person who is arrested for a crime and who is refused bail shall, within 90 days after the date of confinement, be entitled to have the charge against him or her heard by a grand jury having jurisdiction over the accused person[.] . . . In the event no grand jury considers the charges against the accused person within the 90 day period of confinement . . . , the accused shall have bail set upon application to the court.

Denson argues that he was entitled to bail under OCGA § 17-7-50 because the grand jury did not hear the charges against him within 90 days of February 9, 2010, the date

the detainer was filed. In essence, he contends that the filing of the detainer constituted his arrest and confinement on those charges.

Pretermitting whether a properly filed detainer could constitute an "arrest" and "confinement" for the crimes for which the detainer was issued, we reject Denson's contention that the purported detainer in this case had that effect, because we find that, under OCGA § 42-6-2, the Georgia Department of Corrections was not authorized to accept and file it. That Code section authorizes the Georgia Department of Corrections to "accept and file *only* those detainers which meet the requirements of [OCGA §§ 42-6-1 through 42-6-6]," OCGA § 42-6-2 (emphasis supplied), except in circumstances not pertinent to this case.

The purported detainer in this case, however, did not meet those requirements because it did not meet the statutory definition of a detainer set forth in OCGA § 42-6-1 (3). The detainer in this case was based upon an arrest warrant. The plain language of the statutory definition, however, requires that a detainer be based upon a pending indictment, a pending accusation, or a conviction or sentence pending appeal:

> "Detainer" means a written instrument executed by the prosecuting officer of a court and filed with the [D]epartment [of Corrections]

4

requesting that the department retain custody of an inmate pending delivery of the inmate to the proper authorities to stand trial upon a pending indictment or accusation, or to await final disposition of all appeals and other motions which are pending on any outstanding sentence, and to which is attached a copy of the indictment, accusation, or conviction which constitutes the basis of the request.

OCGA § 42-6-1 (3). See also Ga. Comp. R. & Regs. r. 125-2-4-.09 (1) (Georgia's rules and regulations governing the Department of Correction's offender administration, which substantively mirror the statutory definition of detainer at OCGA § 42-6-1 (3)).

We cannot extend the statutory definition of a detainer in OCGA § 42-6-1 (3) to include instruments based upon arrest warrants. In the context of interstate detainers our Supreme Court held, "[w]hile it may be common practice for the State to attempt to detain a prisoner based upon an arrest warrant for other charges, . . . this Court must conclude that an arrest warrant, in and of itself, is insufficient [to invoke the Interstate Agreement on Detainers, OCGA §§42-6-20 - 42-6-25]." (Citation and punctuation omitted.) *State v. Carlton*, 276 Ga. 693, 696 (583 SE2d 1) (2003). In so doing, the Supreme Court reversed this court's decision recognizing the effectiveness of an interstate detainer based upon an arrest warrant. See *Carlton v. State*, 254 Ga.

App. 653, 655-658 (2) (563 SE2d 521) (2002). We discern no basis for reaching a different result under the general provisions governing intrastate detainers. The plain language of OCGA § 42-6-1 (3) does not include arrest warrants, Denson cites to no authority supporting a different reading of OCGA § 42-6-1 (3), and the only decision we have found on point, *Riley v. State*, 180 Ga. App. 409 (349 SE2d 274) (1986), predates the Supreme Court's *Carlton* decision and is not binding precedent because two of the three judges concurred in the judgment only. Ct. App. R. 33 (a).

Because the purported detainer at issue here did not meet the statutory requirements for a detainer, the Department of Corrections was not authorized to accept and file it. OCGA § 42-6-2. It was therefore without legal effect, could not constitute arrest and confinement of Denson, did not require the presentment of the charges to a grand jury within 90 days, and did not entitle him to automatic bail under OCGA § 17-7-50. Consequently, the trial court was not required to grant Denson's motion for bond under OCGA § 17-7-50.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*